Oshea Orchid (SBN 298375)
oshea@orchidlaw.com
George Baffoe (SBN 356347)
george@orchidlaw.com
**Orchid Law PC**
31007 San Martinez Rd.
Val Verde, CA 91384
Tel: (855) 588-7664

Attorneys for Plaintiffs, VERONICA AGUIRRE, et al.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERONICA AGUIRRE, GINGER WALLIS, GABRIEL SANTILLAN, TERRI SANTILLAN, CRISTHIAN ALEJANDRO SALDANA, CARLOS SALDANA, JOSE TORRES, AARON ETCHISON, DALILA BARAJAS, SERGIO TREJO GRAJEDA, ERIKA PULIDO CAMPOS, JULISSA PULIDO CALDERON, MARIA VELAZQUEZ, EMELYN RIVERA, M.H.R-A, a minor, by and through EMELYN RIVERA, as her Guardian *ad Litem,* NANCY MENDEZ, D.H.1, a minor, and D.H.2, a minor, by and through NANCY MENDEZ, as their Guardian ad *Litem,* VERONICA ARREDONDO, MIGUEL ARREDONDO, MICHAEL ARREDONDO, CECILLIA SOLORIO, ALEJANDRA ALEJO, ALEXANDER ALEJO RAIFORD, PAUL H. ALEJO, ALFREDO G. ALVAREZ, ZOE ETCHISON, RUBEN SANCHEZ, ANGELICA REA, MARIA LOYA, LORENZO M. LOYA, MATILDE REYES LOYA, MICHELLE LOYA, BRYANNA LOYA, A.G., a minor, M.C. a minor, and G.C., a minor, by and through BRYANNA LOYA, as their Guardian *ad Litem,* IDY BARRERA TORRES, JOSE IXIAN TORRES, KAIRO CARMELO TORRES, | Case No.:<br><br>**COMPLAINT FOR DAMAGES:**<br>**1) PRIVATE NUISANCE**<br>**2) NEGLIGENCE**<br>**3) NEGLIGENCE PER SE**<br><br>**DEMAND FOR JURY TRIAL** |



Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

BRANDY TORRES, AISSA HIEDI TORRES, and JULIA RODRIGUEZ,

Plaintiffs,

v.

WASTE CONNECTIONS US, INC.; MADERA DISPOSAL SYSTEMS, INC.; and DOES 1 through 100, inclusive,

Defendants.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

## INTRODUCTION

1. Plaintiffs bring this action against Defendants Waste Connection US, Inc, and Madera Disposal Systems, Inc. Defendants operate the Avenal Regional Landfill ("Landfill"), a 173-acre municipal solid waste landfill, located in the northern section of the City of Avenal, Kings County. Several neighborhoods, parks, schools, and businesses surround the Landfill and are impacted by its operations.

2. Since approximately 1976, the City of Avenal has operated the Landfill that releases pollutants, air contaminants, water contaminants, and noxious odors, causing material injury to Plaintiffs and their property through negligence and nuisance.

3. The Landfill caused noxious odors and toxic gases to emanate, making living conditions around the Landfill unbearable and causing the residents in the surrounding neighborhoods to experience headaches, nosebleeds, respiratory issues, heart problems, and emotional distress, among other harms.

4. Defendants caused this Reaction. Defendants then failed to detect the Reaction in a timely manner and, since it was discovered, have failed to stop the Reaction or abate its effects. Indeed, Defendants' mismanagement of their response to the Reaction has unnecessarily elongated its effects.

5. Defendants' actions have created a severe nuisance and harmed the health and property of nearby residents and workers.

6. Plaintiffs seek injunctive relief and compensatory and punitive damages for the extensive harm they have suffered because of Defendants' actions.

## JURISDICTION AND VENUE

7. Jurisdiction in this Court is proper under 28 U.S.C. § 1332(d)(a)(1) because there is complete diversity between the parties.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(1) because a substantial part of the events giving rise to the claims occurred in the Eastern District of California and because Defendants all reside there.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

**THE PARTIES**

9. Plaintiffs are approximately 43 individuals who have been damaged by the Subsurface Reaction. These individuals currently live or work around the Landfill or used to live or work around the Landfill, but were forced to move away from the Landfill because of the Subsurface Reaction. A complete list of the Plaintiffs is contained in Appendix A attached hereto.

10. Defendant Waste Connections US, Inc. ("Waste Connections"), is, and at all relevant times mentioned herein was, a corporation duly formed under Delaware law, with its principal place of business located at 3 Waterway Square PL #110, The Woodlands, Texas 77380.

11. Defendant Madera Disposal Systems, Inc. ("Madera") is, and at all relevant times mentioned herein was, a corporation duly formed under California law, with its principal place of business located at 3 Waterway Square PL #110, The Woodlands, Texas 77380.

12. Defendants, primarily through the Avenal Regional Landfill, operate the Landfill located at 1200 Skyline Blvd., Avenal, CA 93204.

13. On information and belief, Madera, a subsidiary of Waste Connections, exercises significant control of the Avenal Regional Landfill, including but not limited to the general management of, and daily activities at, the Landfill.

14. Waste Connections and Madera at all relevant times had a unity of interest and ownership such that any individuality and separateness between them has ceased, and each such entity is the alter ego of the other entity.

15. The names of the other Defendants and/or their involvement in Plaintiffs' situation are unknown to Plaintiffs, who therefore sue such Defendant in this action by fictitious names, identified as DOES 1-100. Each of the Defendants designated as a Doe is legally responsible in some manner for the unlawful acts described above. Plaintiffs will seek leave of the Court to amend this complaint to reflect the true names and capacities of the Defendants designated as Does 1-100 when their identities and/or involvement become known

16. Each Defendant (including Does 1-100) was at all relevant times the co-conspirator, employee, servant, partner, joint venturer, successor, assign, aider, and/or abettor of each other Defendant with respect to the wrongful conduct alleged. Each was acting within the course and scope

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

of said conspiracy, agency, employment, unity of interest, and/or joint venture and with the permission, knowledge, approval, ratification, and consent of each other, and each is responsible and liable in some manner for the damages or injuries sustained or threatened to be sustained by Plaintiffs

17. Whenever this complaint references acts of any Defendant or one of its unnamed agents or co-conspirators, such allegation shall be deemed to mean the act of all other Defendants, unless the reference is in a particular cause of action, and each of them acting, individually, jointly, and severally.

18. Defendants aided and abetted each other in accomplishing the wrongful acts. In doing so, Defendants acted with an awareness of their wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful scheme.

19. Each Defendant committed, conspired to commit, and/or ratified each of the acts and omissions alleged in this complaint.

## STATEMENT OF FACTS

20. The Landfill is located immediately adjacent to, or near, the City of Avenal and residential neighborhoods.

21. Avenal and its residential neighborhoods are home to several thousand residents, as well as schools, parks, and churches.

**The History of the Community Involved**

22. Avenal has had a long history that stretches back far before the Landfill was created.

23. Located in the Kettleman Hills and just west of Tulare Lake, Spanish soldiers exploring named the area "Avenal," meaning "Oatfield" in Spanish, as the land was covered with wild oats. In the early 1850's, the first American settlers arrived in the area to raise cattle and farm.

24. Prior to this, the Tachi Yokut tribe had inhabited the area for centuries. The tribe had known there was oil in the hills, with natural seepage. This created countless efforts in the 1900's of drilling in the hills.

25. Between 1928 and 1929, the discovery of oil after a massive drilling expedition blowout, transformed Avenal into a "boomtown". The Standard Oil Company (now Chevron Oil Corp.), after surveying, brought houses in from Taft, and a community was built, boasting a population of roughly 3,000, who were mostly oil workers.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

26. By 1940, Avenal was the second largest town in Kings County. However, by the early 1950's the collapse of oil and gas production came, left the economy and population declining steadily. Homes, stores, and buildings were vacated until the 1960's, when an influx of agricultural workers made a major impact on Avenal and the surrounding areas.

27. In the 1970's, after the California Aqueduct and the opening of Interstate 5, Avenal was once again transformed and incorporated by Kings County. From there, over the decades, Avenal saw the construction of the Avenal State Prison, new buildings and infrastructure, and the boom of a bountiful pistachio crop, giving the city its nickname of the "Pistachio Capital of the World".

28. Today, Avenal is a diverse community of working-class people, with a population of 13,696 (including inmates at the Avenal State Prison). Many of the residents largely work at the prison or in the agriculture industry.

**History of the Avenal Regional Landfill**

29. The Landfill is a Class III disposal site, permitted through a Solid Waste Facilities Permit ("SWFP") No. 16-AA-0004 by California Department of Resources Recycling and Recovery ("CalRecycle"), and issued by the Kings County Local Enforcement Agency ("Kings LEA"). The Landfill accepts municipal solid waste, construction and demolition waste, and industrial waste.

30. In 1929, the site of the Landfill was used as a disposal site, owned and operated by Standard Oil Company (Chevron Oil Corp.). In 1976, the Avenal Regional Landfill site was transferred in ownership from the Standard Oil Company to the Avenal Community Services District in 1976 and was permitted. It originally was listed as a Class II disposal site, accepting household and commercial waste and refuse.

31. By 1979, after the city's incorporation, the City of Avenal took over ownership and operation. By 2002, the Landfill became too operationally challenging and financially burdensome for the City to manage alone, so the City entered an agreement with Madera Disposal, Inc., to take over day-to-day operations and management. Madera Disposal, Inc., was later absorbed by Waste Connections, whom operates and manages the Landfill to date.

32. The Landfill initially operated under a series of zoning entitlements. Then, on February 13, 1979, the Landfill obtained Conditional Use Permit ("CUP") 1189, which permitted the Landfill to

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

expand and continue operating under certain conditions. Sometime between 1979 and 1990, the Landfill was reclassified as a Class III solid waste landfill.

33. On January 30, 1992, then management, Western Waste Industries, applied for another CUP (No. 043) to further expand and extend the life of the landfill. They further stated that the project would include expansion of the landfill, renovation of the existing landfill, and final closure for the expanded landfill.

34. In late 2003, the Landfill asked to amend CUP No. 043 for an increase in daily tonnage from 300 tons per day to 475 tons per day, a change in operator from the City of Avenal to Madera Disposal Systems, Inc., a modification of the facility hours and maintenance and a change of the estimated closure date of 2040 to 2028. The California Integrated Waste Management Board ("CIWB"), at the time the responsible agency, stated that this project would have a significant effect on the environment, but overall approved the project.

35. The Central Valley Regional Water Quality Control Board ("RWQCB"), through regulations under 27 CCR, Chapter 4, Article 4, requires that an operator of a waste management facility that discharges wastes to land obtain an operating permit known as Waste Discharge Requirements ("WDRs"). The main supporting document that is required for a landfill to obtain a new or updated/revised SWFP and WDRs is called a Joint Technical Document ("JTD").

36. Again, the Landfill applied for the issuance of a revised SWFP, in 2005, attached in support of a November 2004 JTD, asking for another expansion, an increase in tonnage, elevation of 1,300 feet, hours of operation to 24 hours a day, and the estimated closure date from 2028 to 2020. This project was approved and was subject to review in 2010.

37. In 2008, the LEA approved Amendment 1 to the November 2004 JTD, which presented engineering design plans reflecting revised waste fill sequencing, as well as revisions based on the RWQCB, Central Valley Region's comment letter dated January 6, 2005.

38. In 2010, a Five-year SWFP permit was issued by the LEA, which also included Amendment 2 of the JTD, which included an updated estimate of the remaining site life and site capacity; revised site address; updated closure and post-closure maintenance cost estimates; and, updated operating permits.

39. In 2013, the Landfill submitted JTD Amendment 3, to allow the acceptance of treated wood waste, which was subsequently approved.

40. In 2014, Amendment No. 4 was submitted with the intent of implementing a program to accept non-hazardous, non-designated, high-moisture-content waste, process the waste before disposal to reduce the moisture content to less than 50%, and then bury the waste as Class III refuse. This was ultimately approved by the LEA in 2018. JTD No. 4 was ultimately rejected in 2015. Subsequently, Amendment No. 5, was also submitted around this time and ultimately was approved in 2016.

41. In 2015, the SWFPP was renewed again, with an estimated closure year of 2023. The permit was set for review again by April 25, 2020.

42. In 2018, the landfill submitted its SWFPP application. The APCD issued the Permit to Operate (#2003121088) along with its operating liability certification.

43. In 2019, Waste Discharge Requirement Order No. R5-2019-0071 was issued. Closure financial assurance documentation was also submitted.

44. In 2020, the Landfill submitted an application for Permit review and JTD Amendment No. 6. The first application for Permit review was rejected in August and subsequently re-filed.

45. On April 21, 2020, the LEA completed the Five-Year Permit Review for the Avenal Regional Landfill. The LEA found that the current Solid Waste Facilities Permit (issued in 2005) needed to be updated to correct the permitted design capacity and estimated closure date. The LEA directed the operator to submit an application for a permit modification to make the required changes as well as other updates to the JTD. On October 1, 2020, the LEA received the SWFP Modification application package. The application package included the following changes: Updating the first page of the permit to reflect the total permitted design capacity to 36.3 million cubic yards (mcy) rather than the remaining site capacity; Updating the estimated closure date from 2020 to March 2056; and updating the JTD as identified in the Five Year Permit Review Report. Ultimately, the permit was approved. The Landfill also submitted a preliminary closure and post-closure maintenance plan.

46. In 2021, the Landfill submitted JTD Amendment 7 to revise specific figures and describe the Landfill's remaining and consumed capacity. This was approved in 2022.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

47. In 2024, the Landfill submitted its application for SWFPP. In 2025, the SWFPP was once again renewed, with an estimated closure year of 2056. The permit is set for another review by July 29, 2030.

48. As of date, the types of permitted wastes received at the Landfill include agricultural, asbestos (non-friable), construction demolition, dead animals, industrial, processed green mill, municipal waste.

**Agency Enforcement**

49. Multiple environmental agencies are responsible for regulating the Landfill, engaging in inspection and enforcement activities. The agencies include: San Joaquin Valley Air Pollution Control District ("the District"), California Air Resources Board ("CARB"), Kings LEA, CalRecycle, Department of Toxic Substances Control ("DTSC"), Central Valley Regional Water Quality Control Board ("RWQCB"), State Water Resources Control Board ("SWRCB"), California Environmental Protection Agency ("CalEPA"), and the United States Environmental Protection Agency Region 9 ("U.S. EPA")

50. Each agency is responsible for a specific type of permitting, regulations, and enforcement activities to which the Landfill is subject to under their jurisdiction. Together, from 2020 to 2026, these agencies have conducted numerous amounts of investigations, inspections, and surveillance of the Landfill that has resulted in numerous citations and Notices of Violations ("NOVs").

51. The Kings County Local Enforcement Agency ("LEA") The LEA is responsible for carrying out solid waste enforcement in its jurisdiction as defined in 14 CCR Division 7, 27 CCR Division 2, Subdivision 1 (Section 20005 et seq.) and Division 30 of the Public Resources Code. This is accomplished through regular inspections which are documented on inspection reports. Further, LEAs also process solid waste facilities permit applications, hold public informational meetings, conduct reviews of issued permits for all solid waste facilities at least once every five years, and plays a major role in the California The Environmental Quality Act ("CEQA") process is mainly used by a responsible agency commenting on environmental documents prepared for new solid waste facilities or existing facilities proposing design or operational changes. The LEA conducts an inspection of the

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

landfill every month and takes enforcement action on non-compliant facilities by issuing Notice and Orders (e.g., compliance order, corrective action order, and cease and desist order).

52. On February 10, 2020, the LEA issued a violation to the Landfill for accepting a dead bovine without prior approval or a local declared emergency.

53. On July 27, 2020, the LEA issued a violation for the Landfill's failure to provide records for 5 load checks instead of 3.

54. On October 12, 2020, the LEA issued a violation due to two large burrito wrapped loads of non-friable asbestos which was dumped on the lined portion of the landfill. Delivery of non-friable asbestos requires prior site approval before being accepted at the site, with individual appointments being established for each load. The landfill must also dig a trench at or near the active face of the landfill, and once the non-friable asbestos is placed in the trench, it must be backfilled immediately.

55. On October 10, 2022, the LEA issued a violation for the Landfill's failure to provide records for 5 load checks instead of 3. Further, a logbook that is required to be maintained daily had no entries for September 28-30.

56. On February 11, 2020, February 11, 2020, February 14, 2020, February 19, 2020, May 5, 2020, June 4, 2020, July 20, 2020, July 20, 2020, July 27, 2020, July 29, 2020, November 12, 2020, January 12, 2021, July 29, 2021, January 1, 2022, January 7, 2025, October 1, 2025, October 21, 2025, December 9, 2025, January 1, 2026, January 15, 2026, February 17, 2026, February 25, 2026, March 5, 2026, March 6, 2026, March 23, 2026, March 24, 2026, March 25, 2026, March 30, 2026, March 31, 2026, April 22, 2026, April 23, 2026, May 7, 2026, May 8, 2026, May 11, 2026, June 10, 2026, June 16, 2026, July 1, 2026, July 7, 2026, July 16, 2026, July 23, 2026, July 25, 2026, August 6, 2026, and August 28, 2026, the LEA investigated odor complaints from residents who reported the smell emanating from the Landfill.

57. Specifically, on July 20, 2020, the investigation was into odors causing health issues in the community.

58. On August 8, 2020, November 11, 2020, October 14, 2021, January 2025, March 6, 2025, September 3, 2025, March 30, 2026, July 23, 2026, August 14, 2026, and August 15, 2026, the LEA investigated complaints into after-hours landfill operations, dust, and pollution.

59. The California Department of Resources, Recycling and Recovery ("CalRecycle") certifies local LEAs that implement the regulations for the operation and design of solid waste handling, processing, and disposal activities to protect public health and safety and the environment. They have authority to inspect excluded activities to verify that they do not qualify for a solid waste facilities permit. CalRecycle must also concur or object to the issuance, modification, or revision of any solid waste facilities permit written by LEAs. CalRecycle inspects the Landfill every 18 months.

60. CalRecycle completed 4 inspections with the LEA on January 13, 2021, September 26, 2022, April 19, 2024, and September 11, 2025. The September 2025 inspection was a joint inspection with multiple regulatory agencies.

61. On April 19, 2024, CalRecycle issued an Area of Concern ("AOC") for not documenting a March odor complaint on the appropriate form and for not contacting the LEA within 48 hours.

62. CalRecycle has further noted that Landfill gas readings have exceeded 145°F since 2024 and now top 160°F. Surface temperatures above 145°F may indicate a subsurface fire. Historic methane levels of 30–50% have dropped to the low single digits and mid-20s. Concentrations below 15% can signal a subsurface fire. Once below 100 ppm, carbon monoxide levels now average over 900 ppm, with recent highs of 1,490, 1,500, 2,570, and 3,420 ppm in four wells. CalRecycle states that concentrations over 1,500 ppm strongly suggest a subsurface fire.

63. Subsurface elevated temperatures, or subsurface landfill fires, can lead to catastrophic site collapse, groundwater contamination, hazardous waste creation, and the release of toxic fumes.

64. On November 26, 2024, the LEA issued an AOC for an excessive amount of dirt, gravel, and mud being tracked from the facility onto adjacent public roadways, including the main highway. Material was visible in active traffic lanes, creating potential traffic hazards and contributing to off-site environmental impact.

65. The San Joaquin Valley Air Pollution Control District ("The District") performs field inspections at the Landfill to ensure the facility's strict adherence to applicable District Rules 2520, 4102, 4651; the state's Landfill Methane Regulation (17 California Code of Regulations 95464), and federal requirements (Code of Federal Regulations Title 40, Part 60 and Part 63). Since 2020, the District has evaluated and overseen numerous issues at the Landfill.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

66. In 2020, the District completed six (6) inspections, took two (2) enforcement actions, and investigated one hundred (100) complaints at the Landfill. Many of the Complaints were due to odors, open burning, and fugitive dust. On January 28, 2020, the District issued a NOV to the Landfill for failure to control odors causing a public nuisance. On January 29, 2020, the District issued an NOV for an instantaneous surface emission leak exceeding 500 parts per million ("ppm").

67. In 2021, the District completed three (3) inspections, took one (1) enforcement action, and investigated sixty-seven (67) complaints. All complaints pertained to odor. On September 9, 2021, the District issued an NOV for an instantaneous surface emission leak exceeding 500ppm.

68. In 2022, the District completed three (3) inspections, took one (1) enforcement action, and investigated twenty-nine (29) complaints. All but one complaint concerned odors. On May 18, 2022, the District issued an NOV for a component leak in excess of 500ppm found downstream of the blower.

69. In 2023, the District completed two (2) inspections, took one (1) enforcement action, and investigated fourteen (14) complaints. Most of the complaints were related to odor or open burning. On June 6, 2023, the District issued an NOV for excess CO emissions, source test of the flare failed to demonstrate compliance with the CO emission limit.

70. In 2024, the District completed two (2) inspections, took one (1) enforcement action, and investigated thirteen (13) complaints. All but one complaint concerned odors. On June 7, 2024, the District issued an NOV for failure to demonstrate full compliance with Rule 4311 by December 31, 2023, new ultra-low NOx flare not installed and operational by rule deadline.

71. In 2025, the District completed four (4) inspections, took one (1) enforcement action, and investigated twenty-six (26) complaints. The complaints consisted mostly of odor complaints with a few complaints of fugitive dust, open burning, and idling diesel trucks. On September 11, 2025, the District issued an NOV for 9 instantaneous surface emission leaks exceeding 500 ppm.

72. The California Air Resources Board ("CARB") supports and oversees air district stationary source programs. CARB ensures compliance with the Landfill Methane Regulation (Cal. Code Regs. §§95460 to 95476), which reduces methane emissions from municipal solid waste landfills. CARB shares enforcement authority with the District through a Memorandum of Understanding

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

("MOU"), which grants authority to the District to enforce CARB's Landfill Methane Regulation on CARB's behalf.

73. In 2020, CARB completed one (1) landfill inspection and one (1) odor surveillance with the District, both at the Landfill itself and in a neighborhood south of the Landfill. Further, CARB inspectors went door-to-door to speak with residents about odors. Of the 15 residents CARB spoke with, 14 reported constant odors coming from the Landfill.

74. In 2021, CARB conducted one (1) landfill inspection, two (2) mobile-source inspections, and four (4) days of odor surveillance. During the investigation, six exceedances of the Landfill Methane Regulation (LMR) standards were detected. In the two days of mobile-source inspections, CARB issued two citations for improperly labeled off-road equipment at the landfill and for a heavy-duty truck entering the landfill that was missing the Emission Control Label. Finally, during three of the four days CARB performed odor surveillance, a detection of slight to strong chemical odors near the Landfill fence line and/or in the adjacent neighborhood.

75. In 2022, CARB conducted one (1) landfill inspection and three (3) days of odor surveillance. One exceedance of LMR emission standards was detected during the joint inspection, which resulted in an NOV by the District. During the first and second days of odor surveillance, slight petroleum odors were detected downwind of the Landfill at the corner of Hydril and Skyline and near the Landfill entrance. During the second odor surveillance event, which coincided with the landfill inspection, chemical/petroleum odors varying from slight to strong were detected near the Landfill entrance. One CARB inspector identified the odors as landfill gas mixed with waste. Slight petroleum odors were also detected in the neighborhood south of the Landfill.

76. In 2023, CARB conducted four (4) days of odor surveillance and five (5) days of mobile air monitoring. Data collected suggested that methane could emanate from the direction of the landfill and from within the residential and commercial areas. CARB inspectors also conducted four consecutive days of odor surveillance. Slight petroleum odors were consistently detected near the Landfill entrance and downwind the Landfill at the corner of Skyline and Hydril during each day of odor surveillance. Slight petroleum odors were detected in the residential neighborhood on the second day of surveillance.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

77. In 2025, CARB participated in a multi-agency inspection of the Landfill. During the investigation, nine exceedances of LMR emission standards were detected, in which an NOV was issued by the District, with CARB providing support.

78. On January 27, 2026, CARB conducted a joint inspection with the District and the U.S. EPA. Six exceedances of Landfill Methane Regulation emissions standards were detected and enforcement action was referred to the District.

79. The Central Valley Regional Water Quality Control Board ("CVRWQCB" or "Regional Water Board") and the State Water Resources Control Board ("SWRCB") regulate waste discharges to land by issuing and enforcing Waste Discharge Requirements (WDRs) under Title 27 of the California Code of Regulations. For the Avenal Regional Landfill, WDRs were last updated in 2019 (WDR #R5-2019-0071). These requirements include measures for managing leachate and landfill-gas condensate, as well as ongoing groundwater monitoring. The Board reviews the landfill's monitoring reports, conducts site inspections, and takes enforcement action where necessary to ensure compliance.

80. On August 15, 2023, a NOV was issued by the Regional Water Board to the Landfill for failure to immediately notify the Regional Water Board after water quality sample results had a potential indication of a release and for failure to collect verification samples within 30 days.

81. California Department of Toxic Substances Control ("DTSC") is the lead regulatory agency in California for hazardous waste management. DTSC makes decisions on permit applications for treatment, storage, and disposal of hazardous waste and enforces hazardous waste laws, including the Hazardous Waste Management Program which protects public health and the environment by enforcing hazardous waste laws in California. Within this Program, the Permitting Division reviews and makes decisions on permit applications for treatment, storage, and disposal facilities.

82. On September 3, 2025, DTSC's Office of Criminal Investigations ("OCI"), conducted a sampling activity at the Landfill to determine if a subsurface elevated temperature ("SET") event is occurring at the site and if there were any concentrations of hazardous waste constituents in the leachate or condensate that make it exhibit a hazardous waste characteristic or are approaching those concentrations.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

83. California Environmental Protection Agency ("CalEPA"), is the parent agency to six boards, departments, and offices charged with protecting public health and the environment, including CalRecycle, CARB, DTSC, and the Water Boards. CalEPA is focused on helping to support the local level Participating Agency as well as ensuring enforcement and compliance activities are consistent, effective, and coordinated at the Landfill.

84. The United States Environmental Protection Agency, Region 9 ("U.S. EPA"), U.S. EPA remains the sole authority over certain undelegated portions of these regulations, including the authority to review and approve higher operating value requests for the temperatures of specific gas collection wellheads, corrective action and implementation timeline requests, and other elements that are relevant to the ongoing temperature exceedances at the Landfill.

85. In April 2025, the U.S. EPA conveyed observations of conditions of four wells that showed evidence of anomalous subsurface conditions at elevated temperatures. The U.S. EPA recommended corrective actions to reduce temperatures and risk of a landfill fire or a runaway subsurface reaction.

86. In July 2025, U.S. EPA approved a corrective action plan for temperature exceedances for nine wells with elevated temperatures through November 2025. The plan requires the landfill operator to implement some of U.S EPA's recommended corrective actions to reduce temperatures and monitor conditions at the landfill.

87. In January 2026, the U.S. EPA led a joint inspection of the gas collection and control system at the landfill, with CARB and the District. During the inspection, inspectors identified 9 locations on the landfill surface where landfill gas emissions exceeded the regulatory limit, requiring immediate action.

88. In February 2026, the U.S. EPA approved and updated a corrective action plan for all wells with elevated temperatures through August 2026, and continues to monitor the conditions of temperature reductions.

89. While these events were occurring, Plaintiffs suffered. The noxious odors and toxic gases emanating from the Landfill made living conditions around the Landfill unbearable. The Avenal

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

Regional Landfill sits just 500 feet from the nearest residence, with the entire town of 14,000 people living within 1.5 miles of the site.

90. The noxious odors and toxic gases caused Plaintiffs, all of whom live in the surrounding City and neighborhoods, to experience headaches, nosebleeds, respiratory issues, and heart problems, amongst other harms. Plaintiffs were forced to remain inside their homes and forego the use of their yards to avoid the noxious odors and attendant health effects.

91. Plaintiffs were also forced to keep their doors and windows closed when weather conditions otherwise would not so require, solely to avoid the noxious odors and attendant health effects.

92. Plaintiffs also experienced significant distress about the harmful health effects of the noxious odors and toxic gases to which they and their families were exposed. For example, they worried that short stints outside to perform necessary tasks—like mowing their lawn—would expose them to toxic chemicals with unknown short- and long-term health effects. As another example, they worried that allowing their children to play outside or go to school would harm their children's health in unknown ways. Plaintiffs worried that they were being harmed by toxic chemicals even when the noxious odors were not present. For some Plaintiffs, the persistent noxious odors and toxic gases, and their unknown effects, occupied their minds on a regular basis, caused daily stress, and, on occasion, significant anxiety.

93. Plaintiffs were embarrassed by the odors and reluctant to invite guests to their homes.

94. The odors decreased the value of Plaintiffs' properties and assets and made it difficult or even impossible for Plaintiffs to move out of the area.

95. The Landfill effects described above continue to this day and continue to cause Plaintiffs significant harm on a daily basis.

## FIRST CAUSE OF ACTION
PRIVATE NUISANCE
(Against All Defendants)

96. Plaintiffs restate the allegations set forth in the preceding paragraphs.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

97. Plaintiffs all own, lease, occupy or control the properties on which they reside, which are all located near the Landfill.

98. Noxious odors, pollutants, and air contaminants have entered and continue to enter Plaintiffs' properties.

99. These noxious odors, pollutants, and air contaminants originated from the Landfill, specifically from landfill gas and leachate emanating from the Landfill.

100. At all relevant times, the Landfill was constructed, maintained and/or operated by Defendants.

101. Defendants failed to construct, maintain, repair and operate the Landfill in a manner that would not harm Plaintiffs.

102. Defendants have failed to abate the effects of the Subsurface Reaction, which continues to harm Plaintiffs on a daily basis.

103. Defendants' actions or failures to act caused (and continue to cause) the noxious odors, pollutants, and air contaminants to enter Plaintiffs' properties.

104. The odors, pollutants and air contaminants invading Plaintiffs' properties are harmful to Plaintiffs' health, indecent and/or offensive to the senses, and obstruct the free use of their property so as to substantially interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways: causing Plaintiffs to inhale noxious and toxic gases and chemicals, which caused personal injury to them including, but not limited to, headaches, dizziness, nosebleeds, difficulty concentrating, difficulty breathing, heart problems, and other latent health problems; causing Plaintiffs significant distress about the harmful health effects of the noxious and toxic gases and chemicals to which they and their families were exposed; causing Plaintiffs to remain inside their homes and forego the use of their yards; causing Plaintiffs to keep doors and windows closed when weather conditions otherwise would not so require; causing Plaintiffs embarrassment and reluctance to invite guests to their homes; and negatively impacting Plaintiffs' assets' values.

105. Defendants' actions or failures to act were (and are) intentional and unreasonable, or unintentional, but negligent, reckless, or abnormally dangerous.

106. The noxious odors, pollutants, and air contaminants have—and continue to—substantially interfere with Plaintiffs' use or enjoyment of their properties.

107. An ordinary person would reasonably be annoyed or disturbed by Defendants' actions or failures to act and by the noxious odors, pollutants, and air contaminants that have entered—and continue to enter—Plaintiffs' properties.

108. As a foreseeable, direct, and proximate result of Defendants' actions or failures to act, Plaintiffs and their families suffered, and continue to suffer, personal injuries, emotional distress, and damage to their property as alleged herein.

109. Plaintiffs have never given consent for noxious odors, pollutants, dust, debris, and air contaminants to enter and settle upon their land and property.

110. The seriousness of the harm caused by Defendants' actions or failures to act outweighs the public benefit of Defendants' conduct.

111. Defendants' substantial and unreasonable interference with Plaintiffs' use, and enjoyment of their property constitutes a private nuisance for which Defendants are liable to Plaintiffs.

112. Defendants' actions were, and continue to be, intentional, willful, malicious, oppressive, and made with a conscious disregard for the rights or safety of Plaintiffs.

113. Plaintiffs are entitled to compensatory, exemplary, and punitive damages, medical monitoring, injunctive relief, and reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and otherwise.

114. This private nuisance appears to be a continuing nuisance that may be abated. However, Defendants have been unable to abate its effects; the private nuisance may be a permanent nuisance. Plaintiffs reserve the right to seek all damages caused by the nuisance, whether it proves to be continuing or permanent.

## SECOND CAUSE OF ACTION

NEGLIGENCE

(Against All Defendants)

115. Plaintiffs restate the allegations set forth in the preceding paragraphs.

116. At all relevant times, Defendants owned, operated, managed, maintained, and controlled the Landfill.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

117. Defendants owed Plaintiffs the duty to exercise due care in the ownership, design, operation, management, supervision, inspection, maintenance, repair, and/or control of the Landfill.

118. Defendants further owed a duty to operate the Landfill in compliance with all applicable laws, rules, and regulations.

119. On occasions too numerous to mention, Defendants breached these duties by negligently: constructing, maintaining and/or operating the Landfill, causing the adverse effects, and failing to abate the effects of the Landfill.

120. Defendants' negligence continues to this day, as Defendants' ongoing negligence has permitted the Landfills' effects to persist.

121. Defendants' negligence directly and proximately caused noxious odors, pollutants, and air contaminants, emanating from landfill gas and leachate, to invade Plaintiffs' properties and public spaces on occasions too numerous to mention.

122. Defendants' negligence directly and proximately caused Plaintiffs to suffer personal injury and damage to their properties as alleged herein, including: causing Plaintiffs to inhale noxious and toxic gases and chemicals, which caused personal injury to them including, but not limited to, headaches, dizziness, nosebleeds, difficulty concentrating, difficulty breathing, heart problems, and other latent health problems; causing Plaintiffs significant distress about the harmful health effects of the noxious and toxic gases and chemicals to which they and their families were exposed; causing Plaintiffs to remain inside their homes and forego the use of their yards; causing Plaintiffs to keep doors and windows closed when weather conditions otherwise would not so require; causing Plaintiffs embarrassment and reluctance to invite guests to their homes; and negatively impacting Plaintiffs' assets' values.

123. These harms were reasonably foreseeable by Defendants.

124. Defendants' breaches of their duties to Plaintiffs were committed knowingly, maliciously, and with a conscious disregard of the rights or safety of others.

125. Plaintiffs are entitled to compensatory, exemplary, and punitive damages, medical monitoring, injunctive relief, and reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and otherwise.

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

**<u>THIRD CAUSE OF ACTION</u>**

NEGLIGENCE PER SE

(Against All Defendants)

126. Plaintiffs restate the allegations set forth in the preceding paragraphs.

127. Defendants own, operate, manage, maintain, and control the Landfill.

128. Defendants owed a duty to operate the Landfill in compliance with all applicable laws, rules, and regulations.

129. At all times relevant hereto, San Joaquin Valley Air Pollution Control District Rule 4102 was in full force and effect. It provides:

> Rule 4102. NUISANCE
>
> (4.1) A person shall not discharge from any source whatsoever such quantities of air contaminants or other materials which cause injury, detriment, nuisance or annoyance to any considerable number of persons or to the public or which endanger the comfort, repose, health or safety of any such person or the public or which cause or have a natural tendency to cause injury or damage to business or Property.

130. At all times relevant hereto, California Health & Safety Code § 41700 was in full force and effect. It provides:

> (a) Except as otherwise provided in Section 41705, a person shall not discharge from any source whatsoever quantities of air contaminants or other material that cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or that endanger the comfort, repose, health, or safety of any of those persons or the public, or that cause, or have a natural tendency to cause, injury or damage to business or property.

131. On occasions too numerous to mention, Defendants violated San Joaquin Valley Air Pollution Control District Rule 4102 and California Health & Safety Code § 41700 by negligently: constructing, maintaining and/or operating the Landfill, causing the Subsurface Reaction, failing to prevent the Subsurface Reaction, failing to stop the Subsurface reaction, and failing to abate the effects of the Subsurface Reaction.

132. On occasions too numerous to mention, Defendants violated San Joaquin Valley Air Pollution Control District Rule 4102 and California Health & Safety Code § 41700 by discharging noxious odors, pollutants, and air contaminants, and permitting these noxious odors, pollutants, and air contaminants, to invaded public spaces and Plaintiffs' properties.

133. To date, San Joaquin Valley Air Pollution Control District Rule 4102 has received numerous complaints from community members regarding the noxious odors emanating from the

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

Landfill and has issued multiple notices of violation of San Joaquin Valley Air Pollution Control District Rule 4102 and California Health & Safety Code § 41700 to the Landfill because of these odors.

134. Defendants' violations of San Joaquin Valley Air Pollution Control District Rule 4102 and California Health & Safety Code § 41700 directly and proximately caused Plaintiffs to suffer serious personal injury and damages to their properties as alleged herein.

135. South Coast San Joaquin Valley Air Pollution Control District Rule 4102 and California Health & Safety Code § 41700 were adopted to prevent the discharge of noxious odors, pollutants, and air contaminants and the resultant health and property harms, like those suffered by Plaintiffs.

136. Plaintiffs were and are among the class of persons that San Joaquin Valley Air Pollution Control District Rule 4102 and California Health & Safety Code § 41700 were intended to protect.

137. Defendants' innumerable violations of San Joaquin Valley Air Pollution Control District Rule 4102 and California Health & Safety Code § 41700 were committed knowingly, maliciously, and with a conscious disregard of the rights or safety of others.

138. Plaintiffs are entitled to compensatory, exemplary, and punitive damages, medical monitoring, injunctive relief, and reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and otherwise.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief against all Defendants as follows:

1. Judgment in favor of Plaintiffs and against Defendants on all claims;

2. Injunctive relief against Defendants to prevent further harm to Plaintiffs, including provisions for Defendants' remediation of the nuisance, ongoing monitoring of Plaintiffs' property, forfeiture and/or relinquishment of the Landfill's CUP, permanent closure of the Landfill, and implementation of a closure plan;

3. Compensatory and general damages to be proven at trial, to include:

(a) Damages for personal injuries;

(b) Damages for harm to real and/or personal property, including diminution of property value;

Orchid Law PC
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664

(c) Damages for the lost use of or the lost quiet enjoyment of real and/or personal property;

(d) Damages for past medical and incidental expenses;

(e) Damages for lost wages, earning capacity, business profits or proceeds and/or any related displacement expenses;

(f) Damages for the cost of future medical monitoring; and

(g) Damages for fear, worry, annoyance, discomfort, disturbance, inconvenience, mental anguish, and emotional distress;

4. An award of punitive and exemplary damages against Waste Connections and Madera;[1]

5. An award of attorneys' fees, pursuant to California Code of Civil Procedure § 1021.5 and any other appropriate source, and all other costs of suit;

6. An award of pre-judgment and post-interest; and

7. Any further relief the Court deems just and proper.

DATED: September 25, 2026

**Orchid Law PC**

By: ______________________

Oshea Orchid
George Baffoe
Attorney for Plaintiffs,
VERONICA AGUIRRE, et al.

---

[1] Plaintiffs reserve the right to amend this pleading to seek punitive and exemplary damages against Waste Connections and Madera if evidence is found to support such recovery.

**DEMAND FOR JURY TRIAL**

Plaintiffs VERONICA AGUIRRE, et al., hereby demand a trial by Jury.

DATED: September 25, 2026

**Orchid Law PC**

By: ______________________
Oshea Orchid
George Baffoe
Attorney for Plaintiffs,
VERONICA AGUIRRE, et al.

**Orchid Law PC**
31007 San Martinez Rd., Val Verde, CA 91384
Telephone: (855) 588-7664